UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

LONNIE KEVIN CLARK,                              CIVIL NO. 07-1598 (JNE/JSM)

        Petitioner,

v.                                              REPORT AND RECOMMENDATION

JOAN FABIAN,

        Respondent.

        JANIE S. MAYERON, U.S. Magistrate Judge

        This matter is before the undersigned United States Magistrate Judge on Petitioner's application for habeas corpus relief under 28 U.S.C. § 2254 [Docket No. 1]. Respondent has filed a Response to Petition for Writ of Habeas Corpus and Motion to Dismiss Petition for Writ of Habeas Corpus [Docket No. 5]. This matter was decided on the submissions of the parties.

        This matter has been referred to this Court for a Report and Recommendation pursuant 28 U.S.C. § 636 (b)(1)(B) and Local Rule 72.1(c).

        The Petitioner appears by Bradford W. Colbert, Esq.; Respondent appears by Lawrence F. Clark, Esq., of the Dakota County Attorney's Office.

        For the reasons discussed below, it is recommended that Petitioner's petition for writ of habeas corpus [Docket No. 1] be denied and dismissed with prejudice.

**I.     BACKGROUND**

        The facts, as described in State of Minnesota v. Clark, 2005 WL 6466645 (Minn.Ct.App. Dec. 20, 2005), are as follows: on June 26, 2001, Petitioner entered an

Alford plea[1] to a charge of criminal sexual conduct in the third degree under Minn. Stat. § 609.344, subd. 1(c). The district court stayed imposition of sentence and placed Petitioner on probation for zero to ten years. Petitioner subsequently violated his probation, and at his probation violation hearing on January 26, 2004, asked to withdraw his plea of guilty to criminal sexual conduct in the third degree. The district court allowed Petitioner to withdraw his plea, and set the case for jury trial. On two occasions, Respondent made a motion to amend the complaint to include a charge of criminal sexual conduct in the first degree.[2] Although the record is silent as to whether the district court ruled on Respondent's motions to amend, Petitioner's jury trial proceeded as though he had been charged with criminal sexual conduct in the first degree. The jury found Petitioner guilty of criminal sexual conduct in the first degree and criminal sexual conduct in the third degree. On July 12, 2004, Petitioner was sentenced to 144 months. Petition, p. 1.

---

[1]     By entering an Alford plea, which is also known as a Goulette plea in Minnesota, "a defendant may plead guilty to an offense, even though the defendant maintains his or her innocence, if the defendant reasonably believes, and the record establishes, that the state has sufficient evidence to obtain a conviction." State v. Ecker, 524 N.W.2d 712, 716 (Minn. 1994) (citing North Carolina v. Alford, 400 U.S. 25, 37, 91 S.Ct. 160, 167, (1970), quoted in State v. Goulette, 258 N.W.2d 758, 761 (Minn. 1977)). As with a direct guilty plea, a valid Alford plea must be voluntary and intelligent. Ecker, 524 N.W.2d at 716.

[2]     On April 13, 2001, the prosecution moved to amend the complaint to add the offense of criminal sexual conduct in the first degree. See Respondent's Appendix B [Docket 7], Appendix to Appellant's Brief to the Minnesota Court of Appeals, p. 6 (Notice of Motion and Motion to Amend Complaint). According to Respondent, after petitioner withdrew his guilty plea, the State filed another motion to amend the complaint by adding a count of criminal sexual conduct in the first degree on January 26, 2004. See Respondent's Appendix C [Docket 7], p. 3 (Response to Petition for Review filed with the Minnesota Supreme Court); see also Clark, 2005 WL 6466645 at *2 (stating "Respondent twice made a motion to amend the complaint to include a charge of criminal sexual conduct in the first degree.") However, there is no copy of the second motion to amend the complaint in the Appendix provided by Respondent.

Following his trial and conviction, Petitioner appealed to the Minnesota Court of Appeals, arguing: "(1) the district court erred by allowing him to withdraw his plea; (2) his conviction for first-degree criminal sexual conduct [was] invalid because the complaint only charged him with criminal sexual conduct in the third degree; and (3) the district court committed plain error by failing to instruct the jury on the defense of mistake regarding the complainant's consent to sexual conduct." Clark, 2005 WL 3466645 at *1.   In response to Petitioner's contention that his conviction for criminal sexual conduct in the first degree should be reversed because that offense was not included in the complaint, the Minnesota Court of Appeals determined that based on state law it was fundamental error for a defendant to be convicted of a crime with which he was not charged.  2005 WL 3466645 at *2 (citing State v. Gisege, 561 N.W. 2d 152, 159 (Minn. 1997)).[3]  The court then found that "when such a fundamental error occurs, this court will examine the merits of appellant's claim under the doctrine of reversible error." Id.  The Court of Appeals proceeded to examine the facts underlying Petitioner's claim using the reversible error analysis.  Id. at *2-3.

> Although the record is silent as to respondent's amendment, it is undisputed that the trial proceeded as though appellant had been charged with criminal sexual conduct in the first degree. And appellant received notice of the state's intent to prove first-degree criminal sexual conduct in many instances. The prosecutor explained in his opening statement that appellant was charged with two offenses, first-degree and third-degree criminal sexual conduct. In appellant's opening statement, his attorney stated that the evidence would show that appellant was "not guilty of these *charges*," indicating that appellant, or at least his attorney, knew from the beginning of the trial that he faced more than one charge. (Emphasis

---

[3]      In Gisege, the Minnesota Supreme Court pointed to Minn.R.Crim.P. 10.01 for the proposition that "[t]he charges upon which the state may proceed at trial must be included within 'the indictment, complaint or tab charge.'"  561 N.W. 2d at 156.  See also State v. Voracek, 353 N.W.2d 219, 220 (Minn.App.1984) ("It is elementary that one must be tried and convicted only of the accused charge or a lesser included offense.").

added.) In his closing argument, the prosecutor again noted that appellant was charged with first-degree and third-degree criminal sexual conduct. The court also instructed the jury on both the first-degree and third-degree criminal sexual conduct charges without objection.

The difference between the charges of criminal sexual conduct in the first degree under Minn.Stat. § 609.342, subd. 1(e)(i) (2000), and criminal sexual conduct in the third degree under Minn.Stat. § 609.344, subd. 1(c), is that the first-degree charge requires personal injury to the complainant. Here, both an emergency room nurse and a resident physician testified at trial concerning injuries to the complainant. And appellant's attorney cross-examined both of them regarding those injuries.

At trial, appellant did not object to the repeated references to the first-degree criminal sexual conduct charge. And on appeal, appellant fails to identify any way in which he would have proceeded differently had he been formally charged with criminal sexual conduct in the first degree.

Id. at *3.

Based on this record – where Petitioner had "received notice of the first-degree charge on multiple occasions, both before and during trial," had "cross-examined the witnesses who testified as to the complainant's personal injury, the only element differentiating the first-degree charge from the third-degree charge," and had "failed to explain how he was prejudiced by the lack of a formal charge" – the appellate court rejected Petitioner's argument that the "the conviction [was] per se reversible, regardless of whether he was prejudiced", and affirmed the conviction.  Id. at *3.

Petitioner sought review of the Court of Appeals' decision, which was denied by the Minnesota Supreme Court on February 22, 2006.

On March 22, 2007, Petitioner filed his Petition for Habeas Corpus Relief in this Court.  Petitioner's sole ground for relief in this Petition is that a conviction for a crime for which he was not charged was a structural defect and a fundamental constitutional error.  Pet. Mem. in Support of Petition, p. 4.  Specifically, Petitioner contends that 1) his

conviction for a crime for which he was not formally charged was a structural error requiring automatic reversal, and is not subject to harmless error analysis; and 2) the Minnesota Court of Appeals applied an improper analysis to a structural defect.  Id., p. 4.  Consequently, Petitioner asserts that his conviction was contrary to established federal law.  Id., p. 6.  Petitioner requests habeas corpus relief under § 2254 and reversal of the conviction.  Id., pp. 3, 6.

## II.   DISCUSSION

### A.   <u>Standard of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs a federal court's review of habeas corpus petitions filed by state prisoners.  Section 2254 of the AEDPA provides that a district court will entertain a petition for writ of habeas corpus submitted by a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  In addition, 28 U.S.C. § 2254 provides that a habeas corpus petition:

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;  or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Court of Appeals for the Eighth Circuit has described the review under § 2254(d).  Under the "contrary to" clause of § 2254(d)(1), the writ may be granted if the

state court arrived at a conclusion opposite to that reached by the United States Supreme Court on a question of law or decided a case differently than the Supreme Court has on a set of materially indistinguishable facts.  See Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000) (citing Williams v. Taylor, 529 U.S. 362 (2000)). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identified the correct governing legal principle, but unreasonably applied that principle to the facts of the prisoner's case.  See Copeland, 232 F.3d at 973.  It is not enough that the state court decision applied clearly established law erroneously, the application must also be unreasonable.  Taylor, 529 U.S. at 411.  The test is an objective one.  Id. at 409.

Therefore, "[a] federal court may not grant a petition under 28 U.S.C. § 2254 unless the court concludes that the state court adjudication of the claim 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the [United States] Supreme Court . . . or . . . resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000) (citing 28 U.S.C. § 2254(d); Williams, 529 U.S. at 362).  Under this standard, the federal court "must deny a writ – even if we disagree with the state court's decision – so long as that decision is reasonable in view of all the circumstances."  May v. Iowa, 251 F.3d 713, 716 (8th Cir. 2001) (citing Williams, 529 U.S. at 409-13).

B.      <u>Analysis</u>

Petitioner claims that pursuant to <u>Arizona v. Fulminante</u>, 499 U.S. 279 (1991), his conviction for a crime for which he was not charged, was a fundamental constitutional error which requires automatic reversal.   Pet. Mem. in Support, pp. 3-4.   Petitioner contends that his conviction was contrary to Supreme Court precedents which provide that a person may only be convicted of offenses that are charged, and that due process requires a person to be tried and convicted only for the specific offenses charged.   <u>Id</u>., pp. 4-5, citing <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979); <u>Stirone v. United States</u>, 361 U.S. 212 (1960); <u>Cole v. Arkansas</u>, 333 U.S. 196 (1948); <u>DeJonge v. Oregon</u>, 299 U.S. 353 (1937).   Furthermore, Petitioner argues that when the Minnesota Court of Appeals reviewed the case, they improperly focused on his opportunity to prepare a defense against the charge, rather than on the fundamental right to be convicted of only offenses that are charged.   <u>Id</u>.   In response, the Government contends that the focus of the Court's inquiry should be whether Petitioner was given adequate notice of the charges against him, and whether he was prejudiced in fact by the trial court's failure to render a formal ruling on the motions to amend the complaint.   Resp. Mem. in Opposition, p. 8.

As Petitioner asserted, <u>Jackson</u>, <u>Stirone</u>, <u>Cole</u> and <u>DeJonge</u> all stand for the proposition that a conviction upon a charge not made constitutes a denial of due process.   <u>See</u> <u>Jackson</u>, 443 U.S. at 317; <u>Stirone</u>, 361 U.S. at 217; <u>Cole</u>, 333 U.S. at 201; <u>DeJonge</u>, 299 U.S. at 362.   "These standards no more than reflect a broader premise that has never been doubted in our constitutional system: that a person cannot incur the loss of liberty for an offense without notice and a meaningful opportunity to defend."   <u>Jackson</u>, 443 U.S. at 314 (citations omitted).   It is also true, as Petitioner

argued, that the Supreme Court stated in Stirone that "[d]eprivation of such a basic right [to be tried only on charges presented in an indictment returned by a grand jury] is far too serious to be treated as a variance and the dismissed as harmless error." Stirone, 361 U.S. at 217.[4]

Subsequent to these cases, however, the Supreme Court issued its decision in Fulminante.   Relying on the landmark decision Chapman v. California, 386 U.S. 18 (1967), in which the Court "adopted the general rule that a constitutional error does not automatically require reversal of a conviction," and "recognized that most constitutional errors can be harmless," (id. at 306), the Court opined that there were two different categories of constitutional errors: structural errors and trial errors.   Id. at 309.

> [C]onstitutional errors occurring in a criminal proceeding fall into one of two categories: "trial errors" or errors reflecting "structural defects." "Trial error 'occur[s] during the presentation of the case to the jury,' and is amenable to harmless-error analysis because it 'may ... be quantitatively assessed in the context of other evidence presented in order to determine [the effect it had on the trial].'" Brecht v. Abrahamson, 507 U.S. 619, 629, (1993) (quoting Fulminante, 499 U.S. at 307-08)). In such cases, the conviction will not be reversed if the government can demonstrate "'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" Sullivan v. Louisiana, 508 U.S. 275, 279 (1993) (quoting Chapman v. California, 386 U.S. 18, 24 (1967)).
>
> The second category consists of "a limited class of fundamental constitutional errors that 'defy analysis by "harmless error" standards.'" Neder v. United States, 527 U.S. 1, 7 (1999) (quoting Fulminante, 499 U.S. at 309). These constitutional errors "are so intrinsically harmful as to require automatic reversal (i.e., 'affect substantial rights') without regard to their effect on the outcome."   Id.   In these cases, the error causes a "'defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself.'" Id. at 8, 119 S.Ct. 1827 (quoting Fulminante, 499 U.S. at 310).

---

[4]     In Stirone, the Supreme Court found that under the Fifth Amendment's right to a grand jury indictment, "a court cannot permit a defendant to be tried on charges that are not made in the indictment against him."   Id. at 217.

United States v. Gonzalez-Lopez, 399 F.3d 924, 932 (8th Cir. 2005).

"Indeed, [the Supreme Court has] found an error to be 'structural,' and thus subject to automatic reversal, only in a 'very limited class of cases.'" Neder, 527 U.S. at 8 (quoting Johnson v. United States, 520 U.S. 461, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (citing Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (complete denial of counsel); Tumey v. Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (biased trial judge); Vasquez v. Hillery, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986) (racial discrimination in selection of grand jury); McKaskle v. Wiggins, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) (denial of self-representation at trial); Waller v. Georgia, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) (denial of public trial); Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (defective reasonable-doubt instruction)).  In fact, since Sullivan, the Supreme Court has refused to decide whether the failure to include a required element in an indictment or to submit an element of an offense to a jury amounted to structural errors.  See United States v. Cotton, 535 U.S. 625, 632 (2002); Johnson, 520 U.S. at 468-69).

Neither the United States Supreme Court nor the Eighth Circuit has addressed whether the type of error that occurred in Petitioner's case constitutes a structural defect.  Nonetheless, in United States v. Allen, the Eighth Circuit rejected the appellant's reliance on Stirone and found that a defective indictment did not constitute structural error in that case.  406 F.3d 940, 945 (8th Cir. 2005).  Allen's indictment suffered from a Fifth Amendment defect because it failed to charge at include a required element in an indictment least one statutory aggravating factor and a mens rea

requirement, which were required in order to seek the death penalty. Id. at 943. In finding that the defect did not constitute structural error, the court specifically commented on the fact that Stirone had been decided prior to the Supreme Court's decisions in both Chapman and Fulminante, and that the Supreme Court's list of structural errors in Fulminante and Neder did not include defective indictments. Id. at 944. Observing that they thought the Supreme Court intended its lists of structural errors in Fulminante and Neder to be exhaustive, (id.), the Eighth Circuit went on to apply harmless error analysis to the defective indictment. Id. at 945.

Similarly, in Schrier v. State of Iowa, the petitioner argued in his habeas case that the right to notice of the specific charge against him under the Sixth Amendment was denied when the trial jury was instructed on a theory of premeditated murder, which was not explicitly described in the grand jury's charge.[5] 941 F.2d 647, 649 (8th Cir. 1991). Id. at 649. The Iowa Supreme Court had ruled that any error in instructing the jury on a premeditated murder theory was not prejudicial because there was "sufficient evidence for a jury to conclude 'beyond a reasonable doubt that defendant committed the act of sex abuse that caused Matthew's death.'" Id. In denying the habeas petition, the Eighth Circuit noted that the district court had found that "these findings support the state's contention that any error in instructing the jury on premeditated murder was harmless beyond a reasonable doubt." Id. (citing Chapman v. California, 386 U.S. at 24). On appeal, the petitioner argued "the sixth amendment right to fair notice [was] so fundamental to our system of justice that the doctrine of harmless error should not be

---

[5]      The indictment, which charged first degree murder, only specified a felony murder theory as the means by which defendant's son was killed and made no mention of the theory of premeditated murder. See Schrier, 941 F.2d at 649.

applied."  Id.  Relying on Fulminante, the Eighth Circuit rejected this argument, finding

that a violation of that right was subject to harmless error.  Id., at 649-650.

Based on Fulminante and its progeny, including the Eighth Circuit's holdings in

Allen and Schrier, this Court finds that the Minnesota Court of Appeals' rejection of

Petitioner's argument that his conviction was per se reversible, was neither contrary to

or an unreasonable application of federal law.  These cases all lead to the conclusion

that Petitioner's conviction for a crime that was not charged in the complaint does not

constitute structural error, and is therefore subject to harmless error analysis.[6]

The test for harmless error provides that "[a]ny error, defect, irregularity, or

variance that does not affect substantial rights must be disregarded."  Fed.R.Crim.P.

52(a).  "Before a federal constitutional error can be held harmless, the court must be

able to declare a belief that it was harmless beyond a reasonable doubt."  Chapman,

386 U.S. at 24.  "It is the government's burden to demonstrate that the defendant was

not prejudiced by the error."  Id.[7]

The Court finds that defendant was not prejudiced in this case by the omission of

the charge of criminal sexual conduct in the first degree from the complaint because the

---

[6]     Petitioner did not address in his Petition or memorandum whether the trial court's decision did or did not amount to harmless error.  Nevertheless, for completeness, the Court will engage in the harmless error analysis.

[7]     This Court notes that the Eighth Circuit applies the stricter standard under Chapman v. California, 386 U.S. 18 (1967) in the context of habeas review, requiring a finding that a constitutional error was harmless beyond a reasonable doubt, if the state court has not conducted its own harmless error analysis.  See Beets v. Iowa Dep't of Corrections Servs., 164 F.3d 1131, 1134 n. 3 (8th Cir.), cert. denied, 528 U.S. 825 (1999) (citations omitted).  In this case, where petitioner had not object to the first-degree charge at trial, the Minnesota Court of Appeals examined the merits of petitioner's claim under the doctrine of reversible error, and did not conduct a harmless error analysis.  See Clark, 2005 WL 6466645 at *2.

record establishes he had sufficient notice of that charge against him and a meaningful opportunity to defend against the charge.

In addition to the motions filed by the State, the fact that Petitioner was charged with first degree criminal sexual conduct was repeated by the prosecutor and by the trial judge throughout his trial.   As potential jurors were seated prior to voir dire, Judge Thomas Poch of Dakota County District Court introduced the case by stating that Petitioner was charged with criminal sexual conduct in the first degree and criminal sexual conduct in the third degree.   Respondent's Appendix J [Docket 7], pp. 35-36 (Volume I of Trial Transcript).   During opening statements, the prosecutor indicated that Petitioner was charged with both first-degree and third-degree criminal sexual conduct. Id., p. 68.   Similarly, in Petitioner's opening statement, his attorney stated that the evidence would show that appellant was "not guilty of these charges."   Id., p. 70.   During closing arguments, the prosecutor stated that Petitioner was charged with criminal sexual conduct in the first degree and briefly listed the elements of the crime. Respondent's Appendix J [Docket No. 7], p. 4 (Volume III of Trial Transcript).   Judge Poch instructed the jury as to criminal sexual conduct in the first degree, including the statute, and defined the elements.   Id., pp. 42-44.   Judge Poch supplied the jury with verdict forms for criminal sexual conduct in the first degree.   Id., pp. 48-49.   At the end of the jury instructions, Judge Poch asked the parties whether they had any corrections or additions or suggestions, to which both parties replied that they did not.   Id., p. 51. On March 22, 2004, the jury found Petitioner guilty of one count of criminal sexual conduct in the first degree and one count of criminal sexual conduct in the third degree. Id., p. 56.   Petitioner was subsequently adjudged guilty of criminal sexual conduct in the

first degree.  Id., p. 63.  On July 12, 2004, Petitioner was sentenced for criminal sexual conduct in the first degree to 144 months.  Respondent's Appendix O [Docket 7], p. 58 (Sentencing Transcript).  At no time during Petitioner's trial, in any of the pre-trial proceedings, post-trial proceedings, or at sentencing did he or his counsel object to the charge of criminal sexual conduct in the first degree against Petitioner.  Every proceeding progressed as though Petitioner had been charged by complaint with criminal sexual conduct in the first degree.

Furthermore, Petitioner presented no argument to suggest that he was prejudiced by lack of notice of the charges against him, and failed to detail how he would have proceeded differently if he had had knowledge of the charge of criminal sexual conduct in the first degree by the complaint.  However, even if Petitioner had argued prejudice, the record reflects the opposite.

Minn. Stat. § 609.342, subd. 1(e)(1), the subsection governing criminal sexual conduct in the first degree requires that the actor cause personal injury to the complainant, and the actor use force or coercion to accomplish sexual penetration.  By contrast, a charge of criminal sexual conduct in the third degree pursuant to Minn. Stat. § 609.344, subd. 1(c) requires that the actor uses force or coercion to accomplish the penetration, and does not contain the added element of personal injury.  At trial, testimony was taken on the issue of personal injury, and Petitioner had the opportunity to cross-examine witnesses on that issue.  Dr. Laresa Deboer, a staff emergency physician at Regions Hospital in St. Paul who treated the victim after she was assaulted by Petitioner, testified at length as to the victim's impressive number of injuries.  See Respondent's Appendix J [Docket 7], pp. 177-195 (Trial Transcript, Vol. II).  Petitioner's

counsel cross-examined Dr. Deboer regarding those injuries. Id., pp. 190-193. Ellen Johnson, who was a nurse in the emergency room at Regions Hospital the night the victim arrived for treatment, also testified as to the victim's injuries.[8] Id., pp. 16-35 (Trial Transcript, Vol. I). Again, Petitioner's counsel cross-examined Johnson. Id., pp. 26-32.

The record shows that Petitioner defended himself at trial for the crime of first degree criminal sexual conduct. He cross-examined witnesses on the issue of personal injury, which is the one factor differentiating first degree criminal sexual conduct from third degree criminal sexual conduct.

In summary, despite the fact that the charge did not appear in the complaint, Petitioner clearly had sufficient notice that he was being charged with criminal sexual conduct in the first degree. Petitioner was conscious of the prosecution's motions to amend the complaint and never once objected to the fact that the complaint was never actually amended to include the charge. He defended himself against the charge of criminal sexual conduct in the first degree at trial, was found guilty of that charge and sentenced pursuant to that charge, without objection. On this record, the Court finds that Petitioner had adequate notice of the charges against him and this notice, in combination with his conduct at trial, established that he was not prejudiced by the fact that the complaint was never actually amended. The error that Petitioner was convicted of a crime that did not appear in the operative complaint in this case is harmless beyond a reasonable doubt.

---

[8]     Because she was unavailable to appear in person at the trial, Ellen Johnson's testimony was videotaped prior to the commencement of the trial, and shown to the jury. See Respondent's Appendix J [Docket 7], p. 15 (Trial Transcript, Vol. I); Id., p. 196 (Trial Transcript, Vol. II).

## III. CONCLUSION

In light of the evidence in the record and federal law, the Court finds that the omission of the charge for which Petitioner was convicted from the complaint in this case did not constitute a structural error, and should be examined under the doctrine of harmless error. The conclusion of the state appellate court that Petitioner had notice of the charges against him, and that the omission of the charge of criminal sexual conduct in the first degree from the complaint was not reversible error, is neither contrary to or a misapplication of federal law, nor an unreasonable determination of the facts presented in the state court proceeding. For these reasons, the Court recommends that the petition for writ of habeas corpus be denied with prejudice.

## IV. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

IT IS HEREBY RECOMMENDED that Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 [Docket No. 1] be DENIED and this action be DISMISSED WITH PREJUDICE.

Dated: November 25, 2008

_s/ Janie S. Mayeron_
JANIE S. MAYERON
United States Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before December 12, 2008 a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.